**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**


KANDI SUE L.,[1]                                    **6:19-cv-00982-BR**

       **Plaintiff,**                              **OPINION AND ORDER**

**v.**

**Commissioner, Social
Security Administration,**

       **Defendant.**

**JOHN E. HAAPALA, JR.**
401 E. 10th Avenue
Suite 240
Eugene, OR 97401
(541) 345-8474

       Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

     [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**DAVID J. BURDETT**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2522

Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Kandi Sue L. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on May 4, 2016, alleging a disability onset date of April 1, 2016. Tr. 162.[1] The application was denied initially and on reconsideration. An

---

[1] Citations to the official transcript of record filed by the Commissioner on November 20, 2019, are referred to as "Tr."

Administrative Law Judge (ALJ) held a hearing on May 2, 2018. Tr. 31-66. Plaintiff was represented at the hearing. Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on August 17, 2018, in which she found Plaintiff was not disabled, and, therefore, Plaintiff is not entitled to benefits. Tr. 16-26. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on April 24, 2019, when the Appeals Council denied Plaintiff's request for review. Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on September 4, 1971, and was 46 years old at the time of the hearing. Tr. 162. Plaintiff has a high-school education. Tr. 39. Plaintiff has past relevant work experience as a medical laboratory technician, outside deliverer, and service dispatcher. Tr. 59-60.

Plaintiff alleges disability due to fibromyalgia; degenerative disc disease of the lumbar, thoracic, and cervical spine; depression; osteoarthritis; and obesity. Tr. 195.

Except when noted Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 21-24.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.     The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v.*

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also
Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 404.1520(g)(1).


## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in
substantial gainful activity after her April 1, 2016, alleged
onset date.  Tr. 18.

At Step Two the ALJ found Plaintiff has the severe
impairments of fibromyalgia; degenerative disc disease of the

lumbar, thoracic, and cervical spine; obesity; osteoarthritis; sleep apnea; depression; and anxiety. Tr. 18.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 19. The ALJ found Plaintiff has the RFC to perform light work with the following limitations:

> no climbing ladders, ropes, and scaffolds and occasionally performing the remaining postural activities. The claimant cannot be exposed to extreme heat, extreme cold, or hazards, such as machinery and unprotected heights. Due to pain, side effects of medications and mental impairments, the claimant and understand, remember and carry out only shot [*sic*] and simple instructions. In addition, she can only make simple work-related judgments and decisions (can be learned in 30 days or less but require more than short demonstration to learn). In addition, she is restricted to frequent handling and fingering with both upper extremities.

Tr. 20.

At Step Four the ALJ found Plaintiff cannot perform her past relevant work. Tr. 24.

At Step Five the ALJ found Plaintiff can perform other work that exists in the national economy. Tr. 25. Accordingly, the ALJ concluded Plaintiff is not disabled.


## **DISCUSSION**

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) gave "partial weight" to the

8 - OPINION AND ORDER

opinion of William Betts, PMHNP, treating mental-health nurse
practitioner; and (3) gave "partial weight" to the opinion of
Pamela Roman, Ph.D., examining psychologist.

**I.    The ALJ did not err when she partially rejected Plaintiff's testimony.**

As noted, Plaintiff contends the ALJ erred when she
partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two
requirements for a claimant to present credible symptom
testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and she must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir.
1986).  The claimant, however, need not produce objective medical
evidence of the actual symptoms or their severity.  *Smolen*, 80
F.3d at 1284.

If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if she provides clear and
convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th
Cir. 1995)).  General assertions that the claimant's testimony is
not credible are insufficient.  *Id*.  The ALJ must identify "what
testimony is not credible and what evidence undermines the

claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that she stopped working because she "was forgetting how to do her job[,] . . . forgetting phone numbers, people's names, places, providers, things [she wasn't] supposed to forget." Tr. 44. Plaintiff was also "having diffuse pain . . . [, her] feet were gong numb[, her] arms were going numb[, her] shoulders were hurting, [her] neck was hurting, [her] thoracic was hurting, [her] low back was hurting," and she could not concentrate as a result of her pain. Tr. 44. Plaintiff tried epidural steroid injections and tender point injections, which reduced her pain "for a few weeks" and then they stopped working. Tr. 45. Plaintiff has tried physical therapy, chiropractic care, and spinal-stimulator surgery, but none of those things relieved her pain for more than a short time. Plaintiff attended a pain psychology group, but she stopped attending because it was too painful for her to sit for the two-hour sessions. Plaintiff took various opiates, but she stopped taking them because they did not relieve her pain. Plaintiff also stopped taking Gabapentin because it stopped relieving her pain. Plaintiff testified she can "kind of" sit for four hours in an eight-hour work day but "that's a tough one because . . . [she] get[s] tired sitting or standing then [she] need[s] to lay down." Tr. 51. Plaintiff estimated she spends two or three hours a day lying down. Plaintiff testified she

starts to shake and needs to sit down when she stands for "too long." Tr. 53. Plaintiff stated she used to cry "every five minutes," but at the time of the hearing she was crying "probably three times a day." Tr. 53. Plaintiff noted she cannot "hold conversations. [She] choose[s] the wrong words. [She] do[esn't] make sense to a lot of people." Tr. 54. Plaintiff has panic attacks "many times a day." Tr. 56.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms [is] not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. Specifically, the ALJ noted an October 2014 MRI of Plaintiff's lumbar spine showed "[m]ild to moderate degenerative disc disease at the L2-L3 through LS-Sl levels"; a "small left paracentral/foraminal disc bulge or protrusion at the L2-L3 level"; a "small moderate sized central protrusion or herniation at the LS-Sl level"; "[n]o large disc herniations, osteophytes or advanced canal"; and "foraminal or lateral recess stenosis . . . in the lower thoracic or lumbar spines." Tr. 361. A March 2015 x-ray of Plaintiff's lumbosacral area spine showed "[m]ild degenerative disc and joint disease of the lumbar spine. No dynamic subluxation on flexion or extension views." Tr. 361. The March 2015 x-ray also reflected

Plaintiff's "[d]isc height loss at Ll-L2, L4-L5, and L5-Sl, similar to [October 2014 MRI]. No malalignment. No evidence of dynamic subluxation on flexion or extension views." Tr. 361.

The ALJ also noted an August 2016 MRI of Plaintiff's lumbar spine

> demonstrate[d] an overall lack of the natural
> lordosis curvature of the lumbar spine[,] . . .
> modic end plate changes . . . at L2-3 with facet
> hypertrophy[, . . . disc height loss . . . at L4-5
> with modic changes at the endplates[,] . . .
> moderate height loss at L5-S1[,] . . . . a small
> central disc bulge with moderate central
> stenosis[,] . . . moderate left foraminal
> stenosis[,] . . . mild right stenosis[,] modic
> changes at both levels[, and] no evidence of
> instability.

Tr. 805. The ALJ noted Plaintiff complained about pain in her knees, neck, and fingers from osteoarthritis, but an x-ray of Plaintiff's hands in September 2017 showed "minimal degenerative changes in DIPs, PIPs, no MCP joint space narrowing or erosions." Tr. 847. A September 2017 x-ray of Plaintiff's feet showed "minimal degenerative changes in the 1st MTPs, right plantar and calcaneal osteophyte, . . . [and] mild degenerative changes in the left midfoot." Tr. 847. A September 2017 x-ray of Plaintiff's knees showed "mild degenerative changes with minimal medial joint space narrowing . . .; minimal right anterior compartment DJO; mild misalignment of patella, more on the left." Tr. 847.

In addition, the ALJ noted James Morris, M.D., Plaintiff's treating physician at Pain Management Partners, found "[t]here is

very poor agreement between [Plaintiff's] pain behavior and [her] report of present pain," and Plaintiff reported "an exceptionally high number of atypical somatic symptoms." Tr. 901-02.

Dr. Morris noted Plaintiff

> reports very little variability between worst and least pain. Such lack of variability is highly unusual. As such, the examiner should exercise caution in accepting the pain report . . . . In addition, it is noted that there is a marked discrepancy between [Plaintiff's] behavioral manifestation of pain and the client's verbal report of pain. Specifically, [Plaintiff] reports much more pain than . . . she displays. Such inconsistency needs to be investigated quite thoroughly, and may be suggestive of attempts at conscious deception. Prior studies indicate that such discrepancies are over four times as likely to occur in the face of conscious deception or exaggeration.
>
> * * *
>
> Compared to other chronic pain patients, [Plaintiff's] peak pain experiences are characterized by more frequent than expected symptoms of the following somatic and psychosocial distress: Symptoms of memory, concentration, and cognitive dysfunction. Symptoms such as fatigue, tiredness, weakness, and lack of energy. Withdrawal and an unwillingness to become involved with things. Dizziness, loss of balance, tinnitus, and/or light headedness. Pain or cramping, which is confined to deep within the body. Intropunitive depression, such as anger turned inward and guilt. Symptoms of anxiety and fear.

Tr. 904. Dr. Morris noted:

> It would appear that [Plaintiff's] pain experience is being significantly and adversely maintained primarily by an unconscious process. The motivation underlying [Plaintiff's] pain experience or report appears primarily to be

13 - OPINION AND ORDER

secondary to psychosocial issues. A close
inspection of the MCMI and MMPI may allow for
identification of these issues.

Tr. 905. In October 2017 William Betts, Plaintiff's treating

psychiatric nurse practitioner, noted Plaintiff "endorsed"

symptoms of major depressive disorder, however

[i]t is difficult to determine if [Plaintiff] is
having true pain and difficulty with her health.
I have reviewed records and the previous
appointment notes for her multiple health issues
and there is very little substantiated test or
imaging for her multiple issues. [By] her . . .
own report she will have an issue resolved and
then she immediately has more pain or more issues.
She has been to the local urgent care or emergency
room multiple times for management of pain and
they will no longer give her narcotic medication.
She sees this as a personal slight and feels
loudly healthcare providers in this area . . . do
not support her in her chronic health issue.

Tr. 969.

The Court concludes on this record that the ALJ did not err

when she partially rejected Plaintiff's testimony about the

intensity, persistence, and limiting effects of her symptoms

because the ALJ provided clear and convincing reasons supported

by substantial evidence in the record for doing so.

**II.  The ALJ erred when she gave "partial weight" to the April
2018 opinion of Plaintiff's treating psychiatric nurse
practitioner William Betts.**

Plaintiff alleges the ALJ erred when she gave "partial

weight" to the April 2018 opinion of N.P. William Betts.

Medical sources are divided into two categories:

"acceptable" and "not acceptable."  20 C.F.R. § 416.902.

Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" include, but are not limited to nurse practitioners . . . . SSR 06-03p, at *2. Factors the ALJ should consider when determining the weight to give an opinion from "not acceptable" sources include the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise. SSR 06-03p, at *4. On the basis of the particular facts and the above factors, the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source. SSR 06-03p, at *5-6. The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6.

On April 13, 2018, N.P. Betts completed a Medical Source Statement in which he stated Plaintiff has major depressive disorder and an anxiety disorder. N.P. Betts noted Plaintiff exhibits the following symptoms: "mood lability, low mood, helplessness, negative thinking, difficulty with decisionmaking, hopelessness, passive suicidal ideation, somatic symptoms, and

isolation." Tr. 1036. N.P. Betts noted Plaintiff's "symptoms will interfere to the extent that [Plaintiff] is unable to maintain persistence and pace to engage in competitive employment . . . [and] will interfere with [Plaintiff's] ability to retain employment if [she] become[s] employed." Tr. 1036. N.P. Betts stated Plaintiff's symptoms would markedly impair her ability to perform activities of daily living; to maintain concentration, persistence, or pace; and to maintain social functioning. N.P. Betts also stated Plaintiff has experienced "repeated episodes of deterioration or decompensation in situations which cause [her] to withdraw from the situation or to experience an exacerbation" and has "a documented history of at least one year of inability to function outside of a highly supportive living situation." Tr. 1037. N.P. Betts, however, opined "if [Plaintiff] became employed," she would not miss any "days [of work] per month . . . due to psychologically based symptoms." Tr. 1037.

The ALJ gave only "partial weight" to N.P. Betts's opinion on the ground that he "did not provide objective medical evidence in support of [his] conclusions." Tr. 24. The record, however, contains numerous treatment notes by N.P. Betts in which he consistently reports Plaintiff suffers from anxiety and major depressive disorder, which cause her to have difficulty concentrating and to suffer memory loss. *See, e.g.,* Tr. 963,

969, 975. N.P. Betts's treatment notes also consistently report
Plaintiff has flat or blunted affect, tangential and/or
circumstantial thinking, and repetitive speech. *See, e.g.,*
Tr. 964, 970, 976, 980, 984, 988. In addition, N.P. Betts's
evaluation of Plaintiff's limitations is supported by the opinion
of Dr. Roman, examining psychologist. Dr. Roman administered the
"Information & Orientation and Mental Control subtests from the
Wechsler Memory Scale, Revised (WMS-R); [the] Digit Span Subtest
from the Wechsler Adult Intelligence Scale, Fourth Edition
(WAIS-IV); [the] Calculation subtest - Woodcock-Johnson III,
Tests of Achievement; [the] Beck Anxiety Inventory (BAI); [and
the] Beck Depression Inventory - Second Edition." Tr. 793.
These tests led Dr. Roman to the following conclusions about
Plaintiff's impairments:

> [Plaintiff] was able to understand and remember
> simple instructions during the interview. . . .
> In terms of attention and concentration, she
> scored at the 6th percentile, in the
> low average range on the Digit Span subtest. . . .
> Given her current presentation she would be unable
> to maintain attention and concentration throughout
> a normal work week and work day without
> decompensating and being extremely distracting to
> others.

Tr. 798.

On this record the Court concludes the ALJ erred when she
gave partial weight to the opinion of N.P. Betts because the ALJ
did not provide specific and legitimate reasons for doing so
based on substantial evidence in the record.

17 - OPINION AND ORDER

### III. The ALJ erred when she gave partial weight to the opinion of Dr. Roman, examining psychologist.

Plaintiff asserts the ALJ erred when she gave partial weight to the opinion of Dr. Roman, examining psychologist.

An ALJ may reject a treating or examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of a treating or examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining

physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

On July 12, 2016, Dr. Roman conducted a psychodiagnostic evaluation of Plaintiff. As noted, during the examination Dr. Roman administered the Information & Orientation and Mental Control subtests from the Wechsler Memory Scale, Revised (WMS-R); the Digit Span Subtest from the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV); the Calculation subtest - Woodcock-Johnson III, Tests of Achievement; the Beck Anxiety Inventory (BAI); and the Beck Depression Inventory - Second Edition. Based on the results of these tests, Dr. Roman concluded Plaintiff is able to understand and to remember simple instructions. On the other hand,

> [i]n terms of attention and concentration, she scored at the 6th percentile, in the low average range on the Digit Span subtest . . . . Given her current presentation she would be unable to maintain attention and concentration throughout a normal work week and work day without decompensating and being extremely distracting to others. Interpersonally [Plaintiff] is avoidant. . . . She has no friends and was unsuccessful at attending a pain management group.

Tr. 798.

The ALJ gave only "partial weight" to Dr. Roman's opinion. Specifically, although the ALJ found Dr. Roman's "conclusion about [Plaintiff's] deficits in understanding more than simple instructions is consistent with the medical consultant opinions," the ALJ gave "little weight" to "the portion of [Dr. Roman's]

19 - OPINION AND ORDER

opinion about [Plaintiff's] inability to maintain attention and concentration throughout a normal workday/workweek" because it was not supported by the opinions of reviewing medical providers. Tr. 24.

As noted, the "opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician." Here the ALJ did not identify the opinion of any treating or examining physician that contradicts Dr. Roman's opinion regarding Plaintiff's inability to maintain concentration, persistence, and/or pace. In addition, N.P. Betts's clinical notes and April 2018 opinion support Dr. Roman's conclusion that Plaintiff cannot maintain concentration, persistence, and/or pace.

On this record the Court concludes the ALJ erred when she gave only partial weight to Dr. Roman's opinion because the ALJ did not provide clear and convincing reasons for doing so based on substantial evidence in the record.


**REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful

purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court has determined the ALJ erred when he partially

rejected the opinions of N.P. Betts and Dr. Roman, both of whom opined Plaintiff is unable to maintain attention or concentration throughout a normal work day or work week without decompensating and being "extremely distracting" to others. The Court, therefore, concludes Plaintiff has established the ALJ would be required to find Plaintiff to be disabled after "such evidence is credited." Thus, the Court concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r*, 223 F.3d 968 (9th Cir. 2000). *See also Reddick*, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits."); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)(if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

Accordingly, the Court remands this matter for the immediate calculation and award of benefits to Plaintiff.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of

benefits.

IT IS SO ORDERED.

DATED this 23rd day of June, 2020.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge